# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 12-6061

_____

In re: Patricia Anne Moore

*Debtor*

------------------------------

J&M Securities, LLC

*Creditor - Appellant*

v.

Patricia Anne Moore

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: May 14, 2013
Filed: July 8, 2013

_____

Before KRESSEL, SALADINO and SHODEEN, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge

J&M Securities, LLC, appeals from an order of the bankruptcy court[1] granting Patricia Anne Moore's motion to avoid a judicial lien on her homestead. Plainly stated, the ultimate question in this case is whether a state law exception to an exemption for a single creditor can prevent the debtor from exempting her homestead from property of the estate. 11 U.S.C. § 522(b). We hold that it does not and affirm.

**Background**

The facts are undisputed. On August 16, 2000, Patricia Ann Moore, the debtor, a/k/a Patricia Wallingsford, in conjunction with her then husband, John Wallingsford signed a guaranty of lease agreement with Caplaco Ten Inc., and Dierbergs Lemay, Inc.

The deed to Moore's home was recorded in the St. Louis County Recorder of Deeds office on April 11, 2003. Moore holds a one half ownership interest in the home. She owns the property with her brother and sister-in-law, who together hold the other one half interest. Of the three owners, Moore is the only one occupying the house and resides in it as her homestead. Her brother and sister-in-law do not claim Moore's home as their homestead.

On March 9, 2005, a judgment was entered against Moore in the Circuit Court of St. Louis County in favor of Caplaco and Dierbergs; Caplaco and Dierbergs transcribed the judgment on June 7, 2006, thereby creating a lien against Moore's home. J&M Securities obtained the judgment and lien by assignment on July 10, 2006. In January 2011, Moore granted the Anheuser-Busch Employees' Credit Union a mortgage against her home.

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

Moore filed her chapter 7 petition on September 6, 2011. She soon converted her case to one under chapter 13. On the petition date, the judgment lien was $72,770.73, the consensual lien (the mortgage) with ABECU was $108,603.00 and Moore's home had a fair market value of $143,000.00. In her schedules, Moore claimed a homestead exemption of $15,000.00 pursuant to Mo. Ann. Stat. § 513.475. J&M objected to Moore's homestead exemption in her chapter 7 case, but did not similarly object after she converted to chapter 13.[2] The bankruptcy court entered the order confirming Moore's chapter 13 plan on February 22, 2012.

Moore filed a motion to avoid J&M's judicial lien. The credit union supported the motion and J&M objected. The bankruptcy court ruled that 11 U.S.C. § 522(f) allowed avoidance of all but $2,198.50 of the lien and granted the motion except to that extent. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(b).

**Standard of Review**

We review factual findings for clear error and legal conclusions *de novo*. *Temperato Revocable Trust v. Unterreiner (In re Unterreiner)*, 699 F.3d 1022 (8th Cir. 2012).

**Analysis**

On appeal, J&M challenges the propriety of the Eighth Circuit's ruling in *Kolich v. Antioch Laurel Veterinary Hospital (In re Kolich)*, 328 F.3d 406 (8th Cir. 2003), and the bankruptcy court's reliance on *Kolich*. We recognize that *Kolich* is

---

[2] We agree with J&M that by granting the debtor's lien avoidance motion, the bankruptcy court implicitly decided and overruled J&M's objection to the debtor's exemption claim.

3

controlling precedent in the Eighth Circuit and decline J&M's invitation to revisit that court's decision.

J&M also argues that the bankruptcy court erred by summarily dismissing two of its arguments, via footnote, as unpersuasive. J&M's first argument is that Moore's homestead exemption is self-executing which renders § 522(f) unnecessary. J&M anchors this theory in Judge Becker's dissent from *Simonson v. First Bank of Greater Pittston (In re Simonson)*, 758 F.2d 103 (3rd. Cir. 1985), explicitly adopted by Congress[3] in the Bankruptcy Reform Act of 1994. Here J&M simply misses the mark. The *Simonson* dissent stands only for the proposition that pursuant to § 522(i), the debtor steps into the shoes of the judicial lien holder *after* avoiding that lien. Section 522(i) helps prioritize the debtor's exemption under state law with respect to any remaining consensual liens. We agree with the bankruptcy court that the self-execution argument is unpersuasive.

The second footnote argument is grounded upon a firmer legal basis and warrants a lengthier discussion. J&M argues that Missouri's exception to the homestead exemption for prior causes of action by a single creditor prevents Moore from exempting her household from property of the estate.[4]

---

[3] *4 Collier on Bankruptcy* ¶ 522.11[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[4] In a case where this was not an issue, the Eighth Circuit assumed, but did not decide, that this is the law. *See Walters v. Bank of the West (In re Walters)*, 675 F.3d 1142 (8th Cir. 2012).

**State law exceptions to exemptions**

We begin our analysis with the statute: "[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(f)(1). Subsection (b) states, in pertinent part: "an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection ... where such election is permitted under the law of the jurisdiction where the case is filed." 11 U.S.C. § 522(b)(1). Paragraph (b)(2) points the debtor to the list of federal exemptions in § 522(d). Paragraph (b)(3) provides the debtor with the exemptions available under the debtor's state's law and any nonbankruptcy federal exemptions.

The Supreme Court has made two applicable holdings. First, the Court held that for § 522(f) to apply, the debtor must have "possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." *Farrey v. Sanderfoot*, 500 U.S. 291, 301 (1991). Next, the Court held that the applicability of § 522(f) is determined by answering the question of whether the lien impairs an exemption to which the debtor "*would have been* entitled to but for the lien itself." *Owen v. Owen* , 500 U.S. 305, 310-311 (1991). This first is clearly true; the second is the issue in this case.

The Code allows states to opt out–meaning a state can prevent its citizen debtors from choosing the federal bankruptcy exemptions. *See* 11 U.S.C. § 522(b). Missouri is an opt-out state. MO. ANN. STAT. § 513.427. To exempt her homestead, if at all, Moore was required to use Missouri's homestead exemption.

J&M argues that under Missouri law, Moore is not entitled to the homestead exemption and, therefore, her avoidance request fails under step two. The applicable Missouri statutes read as follows:

> The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of fifteen thousand dollars, which is or shall be used by such person as a homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution. The exemption allowed under this section shall not be allowed for more than one owner of any homestead if one owner claims the entire amount allowed under this subsection; but, if more than one owner of any homestead claims an exemption under this section, the exemption allowed to each of such owners shall not exceed, in the aggregate, the total exemption allowed under this subsection as to any one homestead.

MO. ANN. STAT. § 513.475.1

> Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring [sic] such homestead, except as otherwise provided in sections 513.475 to 513.530; and for this purpose such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead, when the party holds title under a deed ... in case of existing estates, such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created.

MO. ANN. STAT. § 513.510

The thrust of J&M's argument is that because the judicial lien is rooted in a cause of action existing prior to Moore's acquisition of her homestead, § 513.510, the exception to the exemption, prevents Moore from exempting her homestead from

6

property of the estate.[5]  While the judicial lien clearly attached to a property interest she held prior to the lien attaching as required under §522 and *Sanderfoot*–which J&M concedes–J&M argues that regardless of lien avoidance, Moore is not entitled to a homestead exemption.

J&M is adamant that the existing cause of action exception under § 513.510 is definitional to the homestead exemption.  In our view, § 513.510 is a separate statute and therefore is not part of the homestead exemption definition.  Regardless of how we view the operation of the two Missouri statutes, the *Owen* court answered J&M's question to the contrary.  There, the Court framed the issue as follows: "The question in this case is whether that elimination [of the judicial lien] can operate when the State has *defined* the exempt property in such a way as specifically to exclude property encumbered by [prior] judicial liens."[6] *Owen*, 500 U.S. at 306.  The Court's use of the word 'defined' was extremely broad in the sense that the Florida exception emanated from case law and was not part of the state exemption statutory scheme.

The Court went on to explain that "[p]re-existing liens, then, are in effect an *exception* to the Florida homestead exemption."[7] *Id*. at 307.  Finally, the *Owen* court concluded that "Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien

---

[5] Presumably, J&M's point is that since the statute makes the homestead subject to prior causes of action, and since J&M's judgment arose out of a prior cause of action, debtor does not have any value to which the homestead exemption could attach since the judgment lien exceeds the value of debtor's interest in the property.

[6] Emphasis added.

[7] Emphasis added.

avoidance provision." *Id*. at 313-314. We think this holding by the Supreme Court is fatal to J&M's argument.

Missouri statutes do not single out prior liens as exempt from its homestead provision, but rather, except prior causes of action–a point J&M emphasizes. The First Circuit is the only court of appeals to address this issue directly and apply the Supreme Court's decision in *Owen*. *See Patriot Portfolio v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999). Currently, Massachusetts' statutes provide an exception to its homestead exemption for liens that attach prior to homestead creation. *See* MASS. GEN. LAWS ANN. ch. 188, § 3(b)(2). However, when *Weinstein* was decided, the state statutes also provided an exception from the homestead exemption for debts contracted prior to the homestead's acquisition, *Weinstein* 164 F.3d at 681-682, similar to the exception in Missouri for prior causes of action. The court analyzed both state law exceptions.

Weinstein had owned his property for 20 years before the judicial lien was recorded. Some four years later, Weinstein recorded his declaration of homestead. Four months after establishing his homestead, Weinstein filed a chapter 7 petition, elected the state law exemption scheme under § 522 and sought to have the judicial lien avoided. The creditor objected to avoidance on the grounds that Massachusetts' prior lien and debt exceptions prevented Weinstein from exempting his homestead. Both the bankruptcy court and the district court ruled that federal law preempted the state law exceptions to the homestead exemption and allowed avoidance of the judicial lien; the First Circuit subsequently affirmed and the Supreme Court denied *certiorari*. *See Patriot Portfolio v. Weinstein*, 527 U.S. 1036 (1999).

In a bankruptcy case, exemption is an issue between the debtor and the creditor body as a whole, represented by the trustee, not between the debtor and a single

creator.[8]  As stated by the Bankruptcy Appellate Panel for the Ninth Circuit, "[u]nder § 522, debtors may exempt certain property from their bankruptcy estate and the reach of their general creditors.  'These exemptions prevent certain property from becoming part of the bankruptcy estate, and thus place the exempted property beyond the reach of the bankruptcy trustee.'" *Hastings v. Holmes (In re Hastings)*, 185 B.R. 811, 813 (B.A.P. 9th Cir. 1995) *quoting Kendall v. Pladson (In re Pladson)*, 35 F.3d 462, 464 (9th Cir. 1994).  It makes no sense to argue that because an asset would be available to one creditor outside of bankruptcy, that it is available to all creditors in a bankruptcy case.

Section 522(c) states that "property exempted under this section is not liable during the case for any debt of the debtor that arose ... before the commencement of the case except–" 1) a tax or a customs duty, 2) domestic obligations, 3) liens that cannot be avoided, 4) liens that are not void, 5) tax liens, and 6) certain nondischargeable debts owed to federal depository institutions.  *See* 11 U.S.C. § 522(c); *Weinstein* 164 F.3d at 679.  Missouri statute § 513.510 serves a similar function–excepting a certain type of debt from exemption protection.  But can the Missouri exception provide additional debt protection beyond the Code's enumerated provisions?

"States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929).  Of course, as we noted previously, the Code allows states to opt out of the bankruptcy exemption scheme.  However, the opt out clause does not naturally lead to "the conclusion that the 'property exempted' in section 522(c) must be defined by first applying all the built-in exceptions to the state

---

[8] Which is not to say that the issue of an exemption cannot be raised by a creditor.  Clearly, a single creditor has the right to object.

exemption statute." *Weinstein* 164 F.3d at 683. "The state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code." *Id. citing Owen* 500 U.S. at 313.

To the extent § 513.510 would except Moore's homestead from exemption as to J&M specifically, we hold that this type of exception is preempted by the specific exceptions listed in § 522(c) of the Code. To the extent § 513.510 would except Moore's homestead from exemption from property of the estate, we hold that this result is at odds with the Code's exemption scheme–and is also preempted.

Other circuit courts have similarly found that *Owen* prevents state law exceptions to exemptions from determining exemptible property under the Code. The Fifth Circuit has held that "although the states remain free to define the property eligible for exemptions under § 522(b), the particular liens that may be avoided on that property are determined by reference to Federal law; specifically, § 522(f) of the Bankruptcy Code." *Tower Loan of Mississippi, Inc. v.* Maddox *(In re Maddox)*, 15 F.3d 1347, 1356 (5th Cir. 1994). The Fourth Circuit has held that a North Carolina state statute must similarly yield to § 522(f). *See Wachovia Bank and Trust Co. N.A. v. Opperman (In re Opperman)*, 943 F.2d 441 (4th Cir. 1991). Ultimately, J&M's state exception to the exemption argument is unpersuasive.

**Statutory calculation**

Because the debtor would be entitled to claim her homestead exempt in her bankruptcy case, but for J&M's lien, §522(f) is available to her. To determine whether a lien impairs an exemption, the Code provides the following formula:

> a lien shall be considered to impair an exemption to the extent that the sum of–(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no

liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C § 522(f)(2).

In *Kolich*, the Eighth Circuit acknowledged that there are a number of cases from other circuits that allowed modifying the 'all other liens' aspect of the statutory formula in the context of a debtor possessing less than 100% interest in the property. However, the Eighth Circuit found "no sufficient basis for concluding that the statutory formula produces ... a result 'demonstrably at odds with the intentions of its drafters.'" *Kolich* 328 F.3d at 410. The court went on to say, "our task is simply to apply § 522(f)(2)(1) as Congress wrote it." *Id*. And, of course, our task is to apply the law as the Eighth Circuit interpreted it.

The parties stipulated that only 50% of the credit union's consensual lien should be used in the *Kolich* calculation. J&M argues that *Kolich* is incorrect. However, we are compelled to apply the Eighth Circuit's precedent. We accept the parties' stipulation and apply *Kolich*.

The Missouri homestead exemption statute, § 513.475, provides for a $15,000.00 exemption. The statute allows an individual owner to claim the entire $15,000.00 exemption if no other property owners claim part of the exemption, but limits multiple owners to exempting, in the aggregate, only $15,000.00. In other words, the maximum that can be exempted from one homestead property is $15,000.00. Here, Moore's claim of a $15,000.000 exemption is allowed under Missouri's scheme.

The bankruptcy court applied the § 522(f)(2) statutory formula as follows:

| | |
|---|---:|
| The judicial lien - **plus** | $72,770.73 |
| All other liens on the property (50% of credit union's consensual lien) - **plus** | $54,301.50 |
| Exemption Moore could claim absent any liens **equals:** | $15,000.00 |
| **Sum** | **$142.072.23** |
| **Minus** - Value of Moore's interest in the property absent any liens (50% of $143,000.00) | $71,500.00 |
| **Equals** - Extent of the Impairment | **$70,572.23** |

The bankruptcy court found that subtracting the extent of the impairment ($70,572.23) from the judicial lien ($72,770.73) left $2,198.50 of the lien unimpaired. The value the bankruptcy court used for all other liens on the property was 50% of the credit union's consensual lien in accordance with Moore's concession that it would be inequitable to apply the entire lien to her interest in property that secures only 50% of the lien. The bankruptcy court held that whether Moore had equity in her interest in the property was irrelevant because the debtor in *Kolich*, likewise, did not have equity. We agree. The bankruptcy court properly calculated the extent of the impairment in accordance with the statute, Eighth Circuit precedent, and the parties' stipulation.

**Conclusion**

We hold that the debtor was entitled to claim her homestead exempt in her bankruptcy case; that J&M's judicial lien impaired her exemption; and that the bankruptcy court properly applied *Kolich* in computing the extent to which the lien impaired the debtor's exemption. Therefore, we affirm the bankruptcy court.

12